REGAN, Judge.
Plaintiff, Thomas Barr, III, a duly licensed attorney admitted to the Bar of this State, instituted this suit against defendants, Virgil Lewis Wall and George Coulter, nonresidents of the State of Louisiana, endeavoring to recover “in contract” and on a “quantum meruit” the sum of $500 as attorneys’ fees for services rendered on behalf of Wall in a suit entitled George Coulter v. Virgil Lewis Wall, No. 303 531 of the docket of the Civil District Court for’ the Parish of Orleans; and prayed that a writ of attachment issue in conjunction with the suit against a 1949 Oldsmobile automobile owned by Wall.
Wall, being involuntarily absent and unrepresented by virtue of his detention in an Illinois penal institution, a curator ad' hoc was appointed to represent him. The curator excepted to the jurisdiction of the Court ratione personae and then answered by way of a general denial.
Coulter appeared through the medium of a motion to show cause why the writ of attachment should not be dissolved for the reason that Barr’s petition reflected no right and no cause of action against Coulter and, in the alternative, that Barr is estopped from urging a cause of action against Coulter. This rqle was dismissed. Coulter then excepted to Barr’s petition in that it was too vague, general and indefinite for him to safely answer thereto. This exception was similarly overruled and Coulter finally answered and denied that Barr was entitled to a fee for professional services rendered to Wall on the theory that Barr, by virtue of his own actions, is estopped from .claiming that either he or Wall ovved him a fee. Coulter further answered in reconvention alleging that the attachment issued herein was wrongfully and illegally obtained and that Coulter is, therefore, entitled to damages in the sum of $7,000.
*552 The court, a qua, after a trial on the merits, rendered judgment dismissing both the main and the reconventional demands as in the case of nonsuit and dissolved the writ of attachment and further ordered that Barr he condemned to pay all costs including the fee of the curator ad hoc in the sum of $100. From that judgment Barr has prosecuted this appeal. Coulter answered the appeal requesting that the judgment on the main demand be amended so as to definitively dismiss Barr's suit and that the judgment dismissing the reconven-tional demand in the sum of $7,000 be reversed.
In oral argument before this Court it was conceded by Barr, that he has abandoned any action which he-, has or may have had against ‘George Coulter, therefore, we are not concerned with this aspect of the case.
The record chronologically reveals that George Coulter was a used car dealer of Coon Rapids, Iowa. In the usual course of business he purchased a number of automobiles, from Virgil Lewis Wall, the titles to which were later ascertained to be forgeries. Coulter repurchased the automobiles from his customers at a loss of approximately $43,000. Thus, it is' apparent that Coulter was defrauded by Wall more or less in the aforementioned amount. Wall, a fugitive from justice, was "appré-hended by the authorities in the New Orleans area. He had in his possession two automobiles, a 1947 Plymouth and a 1949 Oldsmobile,' which were not stolen and which were ostensibly legally owned by Wall.' Upon béing informed of Wall’s apprehension in, New Orleans, Coulter, through His Chicago attorney, retained the services of Weiss and Weiss, New Orleans attorneys, to file suit 'against Wall, over whom jurisdiction was obtained by attachment of the Oldsmobile in suit No. 303 531 of the docket of the Civil District Court for the Parish of Orleans, which is entitled George Coulter v. Virgil Lewis Wall. The Plymouth automobile which was in the custody of the New Orleans Police Department was released to Wall, through the efforts of Barr, for which he- was paid the sum of $100. Thereafter, while incarcerated in a local prison, Wall again retained the services of Barr and agreed to pay him 25% of the amount received of the sale price for the Oldsmobile if Barr was successful in dissolving the writ of attachment. Barr filed a rule to dissolve the attachment alleging that Wall was domiciled in the Parish of Orleans on the date that the writ of attachment was issued and that Wall had been served personally by Coulter with citation. After a trial on the rule, the judge, a quo, concluded that at the time of the issuance of the writ Wall was not a resident of or domiciled in the City of New Orleans, hut was only transiently in this area and, therefore, dismissed the rule for dissolution of the attachment. It, therefore, appears from the record that Barr performed the following professional services (which are the subject matter of this litigation) for defendant Wall" in that case. He filed and argued exceptions to the suit, presented to the Court a motion to dissolve the attachment, argued the motion, prepared a memorandum of authorities for the guidance of the Court and attended a pretrial conference with Coulter’s attorneys. As we have related hereinabove, there was judgment dismissing the rule for. dissolution of the attachment and thereafter Barr prepared an answer to the Suit, which was signed by Wall’s wife, who possessed his power of attorney authorizing her to defend the action.
Wall, who was imprisoned when he retained the services of Barr, had now been removed to Chicago, Illinois, to defend a charge of violating the Dyer Act, 18 U.S. C. §§ 10, 2311-2313. The removal of Wall to Chicago occurred prior to April 6, 1951, the date on which Barr filed an answer on. behalf of Wall. The record further reflects that Mrs. Wall, shortly thereafter, followed her husband to Chicago, and on April. 12, 1951, Barr received a telegram from Mrs. Wall requesting that the title to the Oldsmobile, which had been notarized by Wall before Barr, as Notary Public, in blank, while Wall was locally imprisoned •and which had been given to Barr to facilitate the immediate sale of the automobile in the event that Barr was successful *553 in dissolving the attachment, he forwarded to her in Chicago, Illinois. On April 20, 1951, Mrs. Wall advised Barr by letter that her husband gave the title to the automobile to Coulter’s attorney in Chicago. Subsequent to April 6th, the day on which answer had been filed, one of Coulter’s local attorneys spoke to Barr and requested him to join in a joint motion to release the Oldsmobile to Coulter. Barr refused to accede to this request and informed Coulter’s attorney that he had ah interest in the automobile in that a fee was due him for professional services rendered to Wall, therefore, he was of the opinion that he should not participate’ in a 'joint motion to release the automobile to Coulter. At this point in the testimony, there arose a dispute between Barr and Coulter’s attorney as to whether or not Barr manifested a complete lack of interest in the matter since he' had failed to secure a dissolution of the attachment or whether Barr simply informed Coulter’s attorney that he would not prepare the motion to release the automobile, but' if Coulter’s attorney would prepare and send the motion to him he would mail it to Wall and, at that timé, endeávor to secure payment of his fee. In any event, it appears that Coulter’s attorney acted on the assumption that Barr had manifested a complete lack of further interest in the matter and mailed the motion directly to Wall in Chicago. The motion to release the car was signed by Wall on May 2, 1951-, and thereafter returned to Coulter’s attorney together with the title to the car which was in blank. Coulter’s attorney filed the motion to release in proceedings 303 531 of the docket of the Civil District Court on May 3, 1951, and wrote Coulter’s name in the title at that time. The Judge of the Division to which that case had been allotted refused to sign the joint motion to release signed by Coulter and Wall without Barr first having actual notice of it. Coulter’s attorney, therefore, informed Barr of this fact on May 3, 1951, in the office of the Clerk of the Civil District Court. On Friday, May 4, 1951, Harold Marx, associated with Weiss & Weiss, Coulter’s attorneys, -brought the motion to Barr’s office for approval and was again advised that Barr had an interest in the automobile inasmuch as there was a fee due him. On Monday, May 7, 1951, plaintiff filed this suit and an attachment was issued against the same Oldsmobile automobile, which was still in the custody of the Civil Sheriff of the Parish of Orleans.
Since it is conceded that Barr has abandoned any claim which he may have had against Coulter, the only question posed for our consideration by the main .demand is whether Barr is entitled to an attorney’s fee of 25% of the value of the automobile from Wall.
■We are of.the opinion that Barr is not entitled to recover 25% of the value of the 1949 Oldsmobile for professional services rendered to Wall on a contingent fee basis. The record conclusively establishes that the agreement was predicated and contingent upon Barr’s successful dissolution of the writ of attachment. As further evidence of the fact that this was the agreement which existed between the parties, it was suggested by Barr, on this occasion-, that title to the automobile be. notarizfed by -Wall, before Barr, as Notary Public, in blank, in order to facilitate the prompt sale of the car in the event that Barr was successful in dissolving the attachment. The fee obviously could only be paid upon the sale of the car, Wall was without other funds, and his capacity to seek remunerative employment in the future would, in all probability, be circumscribed by an involuntary servitude.
The record reflects, as we have related hereinabove, that Barr was not successful in dissolving this attachment and, therefore, he is not entitled to recover his attorney’s fee. However, Barr contends that Wall made the performance of his. contingent contract for professional services impossible of fulfillment in that when Wall signed the joint motion to release the automobile to Coulter, he estopped Barr from continuing with his efforts to secure the dissolution of the attachment on the merits of the case. Coulter’s attorney, on the other hand, points out that Barr’s right to a contingent fee passed out of the realm of existence upon his failure to dissolve the writ, -but assuming arguendo that the *554 contingent fee agreement also involved a trial on the merits, Barr was, air all times, fully apprised of both the existence, contents and object of this joint motion. In fact, he was requested to sign it and Coulter’s attorney states, as we have related hereinabove, that Barr’s attitude was that, since he was not going to get a fee out of ■it, he was not going to do any more work in connection with the matter. Barr, as we have said, disputes this statement and contends that he suggested to Weiss that he draw the motion, turn it over to him and he would forward it to Chicago in an effort to prevail upon Wall to pay a f'ee. In any event, the unfavorable implication to be- drawn from the • foregoing facts is overshadowed by a more objective manifestation of intent and the state of one’s mind at a'given time. It appears that on or about April 12, 1951, Barr received a telegram from Mrs. Wall, who was then in Chicago, where her husband' was incarcerated in prison, requesting that Barr' send to her the title to the Oldsmobile, which had been notarized before Barr in blank. Barr states that he immediately forwarded this title to Mrs. Wall.- Barr then received a letter from Mrs. Wall written on April 20, 1951, from Chicago, Illinois, advising him:
“The title to the car which I requested in my telegram to you arrived promptly.
“When the trial came up on April 12th, Bud (Wall) had to release this car over to Mr. Coulter’s lawyer here. From what I hear it is supposed to help him when his sentence comes up which now has been postponed until the 9th of May. Seems as if something else has come up and the date for the trial had to be continued until then. That is about all I can tell you as the lawyer has not said too much to me.
“I regret that I did not acknowledge the receipt .of the title sooner and .wish to take this opportunity to- thank you for your assistance in this matter.”
It is obvious from the contents of the foregoing letter that while Barr, in mailing the title to the car to Mrs. Wall, was motivated by the highest principles of ethical conduct inherent in the relationship of attorney and client, nevertheless, he was fully cognizant of the fact that title to the automobile had passed to Coulter, by virtue of his own actions in releasing the title, sometime between the date of Mrs. Wall’s telegram to Barr on April 12th, and April 20th, the date Mrs. Wall wrote Barr the above letter, and yet Barf did not, until May 7, 1951, endeavor to obtain jurisdiction, principally over Wall, by attaching the automobile, in connection with his claim for a fee, which was already in the possession of the Civil Sheriff for the Parish of Orleans. by virtue of Coulter’s prior attachment. While it is true Barr testified that he forwarded the title to the car to Mrs. Wall in the belief that by doing so he would help in mitigating Wall’s criminal sentence and that he did not know it was to be used to" transfer title to Coulter, we do not comprehend how Barr could have believed it would help Wall in any way except, to be used to transfer title to Coulter and Mrs. Wall’s letter of April 20, 1951, addressed to Barr substantiates our conclusion.
We are, therefore, of the opinion that the conclusion reached by the .judge, a quo, that Barr is not entitled .to recover an .attorney’s fee is correct, however, we believe that his suit should have been dismissed rather than, nonsuited.
The court, a .qua, rendered judgment of nonsuit as to Coulter’s reconventional demand and our careful examination of the record fails to disclose any error in this respect.
For the reasons assigned the judgment appealed from is amended by dismissing the claim of plaintiff and in all other respects it is affirmed.
■ Amended and affirmed.